Good morning and may it please the court. Caitlin Weisberg appearing on behalf of Plaintiffs Appellants. I'd like to reserve three minutes for rebuttal. All right, thank you. This appeal is about requiring parties to follow the evidentiary and procedural rules that guarantee a fair trial. Defendants were allowed to misrepresent facts to the jury, presenting evidence that the use of the taser on Mr. Aguilar was within LAPD policy without being impeached by the actual LAPD findings that the use of the taser violated LAPD policy and was unreasonable. Defendants deliberately flouted multiple evidentiary rulings made by the court so they could put irrelevant prejudicial information before the jury regarding the decedent's alleged gang affiliation, prior drug use, and other topics. Trials do not work and juries cannot fulfill their truth-seeking obligation if only one side plays by the rules. In this case, plaintiffs were denied evidentiary violations and gangsmanship. Well, let me ask you this, just sort of, I think we're familiar with the big chunk of evidence that I think, which has to do with the, however you want to characterize it, but the use of the taser, whether, I think there's arguments of whether it was remedial or whether it was disciplinary or whatever, but you have, and I think that the district court, so you have a process that goes on regarding the use of the taser and the line officers board, I guess, found one thing and the chief found something else and so in this process of whether the taser, and the issue on that is whether the taser was a violation of LAPD policy, correct? Yes, your honor, although the LAPD policy did include the grand standard. Okay, so that my understanding is, having been a former trial judge, you know, one of the things is that you sought to introduce, well, you wanted to introduce basically what the chief said and that obviously if you were to enter, introduce what the chief said, the other side would clearly want to introduce what the officer said about this and then you would essentially have a trial within a trial. I mean, it, that the reports themselves and their conclusions are probably on some level a kind of a hearsay thing that was based on their determination of all the facts and so just sorting all of that out would probably take longer than putting on the whole case. So, I don't see why under 403, and we reviewed the judge for abuse of discretion, the judge couldn't say, you have to prove excessive force, right? That, which is different than taser within policy or outside policy. Why couldn't the judge say, hey, look, to fairly bring any of that in, I would have to allow all of that in, which would take longer than the whole trial. It would confuse the jury and it doesn't, it doesn't exactly, what you have to prove isn't the same thing as whether it's in or out of policy. Why, why don't we just, why can't we just affirm on that? I realize you have another issue where you say the other side opened the door, but I'm just wondering, why do we even have to think about 407 if under 403, it's perfectly within the judge's discretion to allow, to say, no, I'm not going to have the jury confused or distracted on that. Well, Your Honor, that wasn't the, my initial response is that wasn't what the court said when it issued its ruling. It wasn't worried about waste of time or cumulative evidence or creating a trial within a trial. But the more important response is that all of that information was already before the jury. That, that it would not have required any greater expenditure of trial time because the, the, the crux of what was happening at trial was defendants made their initial statements immediately following instance. Those were the statements that were reviewed by, within the police department and resulted in a chief of police finding. And those are the same statements that plaintiffs were putting on in evidence to say, this is what happened during instance. At trial, the defendants changed their story in these significant ways. And so that change in story, which was the basis for them arguing that, oh, the chief of police got it wrong. They didn't really understand. They didn't really understand what was happening. Was the central dispute that was before the jury anyway. So plaintiffs were- But what does it matter what the chief of police thought about whether they should have used the taser when you're suing? Yeah. I mean, you're, it's a 1983 case, right? And what do you have to prove under a 1983? It matters, Your Honor, because it was relevant evidence of what the defendant's conduct was in the case and how that conduct was viewed from the perspective of police policy and police practice. And those were issues in the case. Both sides agreed that those were issues in the case. Both sides were talking about policy. Both sides were talking about what was reasonable or what was unreasonable about the defendant's actions. And the- But didn't you both call experts? You both called experts on force, not that involved that, correct? Yes, Your Honor. Okay. But the department, the department's own judgment of what happened here was significant evidence in plaintiff's favor. It was not cumulative. It was not unnecessary. I think there is- Oh, but it wasn't undisputed because there were people that thought that the tasing was okay. And I mean, and the chief, yeah, he is the top person in there. But then you get into a whole, is the chief now more about, you know, I mean, there was a difference of judgment in there. Isn't that correct? Am I misrepresenting that? There- I don't know, Your Honor. The initial review was a review recommendation by different, by a panel of officers. And there was disagreement there. So there was a majority opinion and minority opinion. And then the chief of police and the police commission adopted the opinion that said that the use of force was unreasonable and violated the LAPD policy in various respects. And it was defendants that would have wanted to put on the evidence regarding the dispute. And that was fine with us. We think that the chief of the opinions finding that the use of force was unreasonable, the chief of police adopting that opinion, the police commission agreeing, that was all important, persuasive evidence favoring plaintiff's case. And if defendants wanted to bring up a dispute about that evidence, that was fine. But that dispute wouldn't have been separate and apart from the issues in the case. It wouldn't have detracted from or taken more time from us to do than what was already being done in the case. And I think, Your Honor, that one of the points that I did want to make was there's this idea, I think, that while plaintiffs had all the evidence they needed to prove their case anyway, so why bother including the chief of police opinion? And I understand the reasoning of that argument, but that's not how the rules of evidence work. This was powerful evidence in plaintiff's favor. It was relevant evidence. It was not unfairly prejudicial. Any prejudice that was there that was unfair did not substantially outweigh the relevance. And those were the factors for determining whether it should have come in or not. So I understand completely that the point Your Honor is making, but I guess it's... I understand your point, and we review it for abuse of discretion. That's, as an appellate judge, it's not, you know, I might have ruled differently, but that doesn't mean that another judge abused their discretion if we can both make good points on this. And so I guess I'm using your own words against you in the sense that I say, well, I rest my case because you're saying I'm reasonable, I'm the judge abused his or her discretion. Well, with all due respect, Your Honor, I was trying to say that I understand the thought process that you're going through, but I actually don't think it's consistent with the rules of evidence. So... It's like crazy. I'm crazy. You're not. I'd like to avoid implying that. But to go to the abuse of discretion standard, I think that that's really... that was not... what you are saying, Your Honor, is not what the lower court said, and that wasn't a use of discretion, is that the lower court did not conduct a case-specific analysis. The lower court didn't say, you know, it's going to waste all this time for these reasons, which I don't think would have applied anyway. The court cited these two other cases which were distinguishable, and the factors that the court stated in the parentheticals for those two cases didn't apply. So the basis for the abuse of discretion is really not making an independent determination in any of them, and coming to the wrong conclusion, in our opinion, yes, but also coming to the wrong conclusion by mis-weighing the factors that they applied in this case. So I understand your challenges, though. You're not... I think you conceded there's sufficient evidence to support the verdict. So you're not challenging sufficiency of the evidence. You're not making instructional challenges. Basically, your challenges are evidentiary. Absolutely, Your Honor. Okay. You want to talk about after... all right. Then let's just assume hypothetically that the in limine ruling passes the abuse of discretion, but then there's something that happens later that your position is that the other side opened the door, the barn door flew open, and so even assuming that evidentiary ruling was okay in limine, then you were entitled to bring it in at that point. So I know that, and then, so I know that the judge, I think, objected, said disregard that, and said don't pay any attention to it, so it, it, but you were prevented from cross-examining to that effect, and then, but then you would also have, beyond showing error, would have to show that it was presidential to the effect, essentially, that the jury verdict would have come out otherwise. Yes, Your Honor, and that's absolutely plaintiff's position, and what the point that was made in the brief was that by the defense experts' testimony substantially changed the balancing, the 403 balancing. But I don't understand what's, what's it, how's a trial judge supposed to handle a situation? If one side opens the door and the other side does not object because they want the door open, that's fine, but here you objected, and then the judge said to the jury disregard, isn't it? Do I have that wrong? Oh yes, no, Your Honor, that's actually not what happened as far as I'm concerned. So we objected to a very specific piece of testimony that was inconsistent with one of the court's other eliminating rulings, that the, that the experts were essentially prohibited from using the word reasonable in their, in their testimony. So she had specifically said that, and plaintiffs had made sure with their expert to avoid the expert testifying in that fashion, and we objected to that defendant's actions were consistent with LAPD policy, and that is what opened the door to the LAPD's contrary findings. So the courts have sustained, sustained plaintiff's objection to the expert's use of the word reasonable, the defense actions were reasonable, but the defendant was still allowed to testify consistent with the entire trial and how it had been going in the court's rulings, that the defendant's actions were consistent with the LAPD's general policy about not using unreasonable force, and consistent with the LAPD's specific policies about taser usage, and the LAPD findings themselves determined that neither of those were true, and that was the impeachment that we really thought was essential to avoid the, the misleading impression created by the defense expert. Can I ask you this question? If, if the expert was prohibited from testifying that the officer's use of force was reasonable, how else was the expert supposed to frame his opinion other than the officer's actions were consistent with policy? I don't have a good answer to that, Your Honor. It was somewhat of a perplexing situation for everyone in trial anyway, because you can see from that one exchange up with the defense expert that the testimony, the way it came in is the defendant's actions were reasonable, objections sustained, the defendant's actions were consistent with LAPD policy, which requires that they be reasonable. You know, that was what the, that was what the game rules were for our trial, and so it's a little confusing, but that's what we were trying to adhere to. I have a question, oh, go ahead. I just have one other question. Does your argument on the defense expert's testimony open the door to admission, at least of the LAPD's official finding? Does it turn on the fact that this expert was so closely affiliated with LAPD? In other words, would it have mattered, let's say, if he were from, you know, some other jurisdiction, and just said, yeah, well, I looked at the LAPD policies just like their expert did, and here's my opinion. For himself as kind of the drafter of these, and he kept saying we and our, and is that the linchpin of your argument on this point? I don't think it does depend on that. I think that's very powerful evidence regarding the misrepresentation and the way that this, the jury was misled, but I do think that a trial could have happened. The defendants knew this LAPD finding was out there. They could have let the plaintiff's expert testify about LAPD policy free police practices. The defense expert, wherever the defense expert was from, could have testified about police practices generally, but as soon as the defense expert started talking about, well, this violates or does not violate the LAPD policy, I think regardless of where the expert came from, the LAPD findings would have been fair impeachment of that expert testimony, because it would, you know, it would disagree with the, it would cast doubt on that expert's reliability. Okay, thank you. Ask you this, I just want to understand, in order for you to prevail in your theory of the case, because obviously it appears that it's undisputed that your client, I want to get, go to the facts, swallowed some dope. And is it necessary for you to succeed to have to be able to show that the tasing had some relationship to his death? Could you only, I mean, I guess, could you hypothetically recover if they said, well, they shouldn't have tased him, but the tasing had no relationship to him dying? How, how does that fit in with your theory? Sure, Your Honor. I mean, could they, I mean, could the jury have said, okay, well, he was tased. It doesn't really matter to us whether it was tased or not, because the reason that he died was because he put dope down his throat and swallowed it and he choked to death. And what did you have to prove in order to prevail on the theory of the case? Did there have to be that nexus? Did the tasing have had to cause his death? Your Honor has put your finger on one of the primary factual disputes of trial. And there was disputed testimony, factual and expert testimony regarding that issue. So, so it was plaintiff's position that A, he didn't swallow it, he was hiding in his mouth, but he, that the, the decedent put the spindle in his throat and killed him. So that was the theory of plaintiff's case. In any 1983 case, you can have nominal damages or other types of damages, even if the excessive force was not the direct cause of his death. So whether there would have been a case either way, I think it's an easy question. We clearly would have had a case and a cause of action that went to trial. I think it's a  that this particular case was the case was that the tasing contributed to his death. That was absolutely what plaintiffs were seeking to file. Okay, so the jury would, for you to prevail, the jury would have had to believe that, which they do know what the actions were, but that the tasing caused his death. And that also relates to what the pathologist would have said. I know there were a number, there were paramedics that were, you know, there were a number of people about whether that there should have been a sweep of the mouth and all of that. Okay, I just wanted to let, we've taken you over. I'm going to give you two minutes for rebuttal. Okay. But I want to find out before we move to the other side, whether either Judge Rakoff or Judge Watford want to ask you any additional questions here. Okay, so you'll have two minutes for rebuttal. All right. Miss Jacobs, it's your turn. 15 minutes. Good morning. Good morning. Sorry for the delay. I had to unmute myself. Good morning, Your Honors. Deputy City Attorney Sean Dabby Jacobs for the defendants in Andapelli City of Los Angeles and the police officers. I think the court understands the issue. And I think the court, the district court properly exercised its discretion to exclude the out of policy finding for numerous reasons. First of all, the out of policy finding, it would have been more prejudicial than perverted. It was a subsequent remedial measure. And there is case law that says that an out, you know, whether an officer violates policy or acts within policy isn't the standard for a constitutional violation. That's both from US Supreme Court case law Davis, the Davis case that I cited my brief, the Wren case that I cited my brief. And case versus Kitsap, which is a Ninth Circuit case, which is also cited in my brief. Well, that's not the standard of relevancy, though. So it still would be relevant, even if it wasn't dispositive. Correct. But here we're in an abusive discretion standard. So I think the discretion to find it if it were introduced, it would be more prejudicial than probative. I mean, of course, why couldn't that be cured by simply an instruction from the court saying you may consider this on the ultimate issues of X, Y and Z. But I instruct you that violation of policy is not the same as what's being claimed here or what was fine or something like that. Well, I it's coming from the chief of police findings that they would have. The jury could have very easily just said, well, the chief of police said it's out of policy. Therefore, it must be excessive force. Therefore, even so, you're you're asking us to assume that despite my hypothetical instruction from the judge, the jury would disregard the instruction of the judge and become utterly confused. Isn't that contrary to about 200 years of Anglo American law? Well, you're right. I mean, but the other the more important question is if they had let in the finding, as Judge Callahan was saying that, you know, well, what about they would have wanted to know, then we would have had it. We would have to have a trial within a trial because there would have been the mini trial in terms of, well, the majority of the use of force board found that was within policy. So why did they find that you have to explore that? And then they were also, you know, plaintiffs say that the evidence was the same and different, but that we don't know what evidence was actually introduced at the use of force board versus what was introduced to trial. And and the plaintiffs weren't prejudiced by that in any event, because they were able to what they did was they had their expert, Leonisio, testify and explain how the policies work and explain, you know, whether they're reasonable policies are consistent with post and things like that. And then what he would do is he would they would play snippets of the officer's testimony. And then they would say, it's snippets from the officer's testimony that they gave both at the use of force during the use of force investigation and at their depositions. And then they would say, ask Leonisio, which was the plaintiff's expert on this issue. Well, does what the officer just testified to is that was that reasonable? Or was that consistent with policy? Why or why not? Right. And if you open that door, if you allow that to come in, I'm just trying to visualize this having been a former trial lawyer, in terms of there would be under no theory, you couldn't just put the reports into evidence. Right, I think I agree. I think the reports themselves, I mean, they would have to call you would have to call witnesses, and then you would have to call witnesses. Correct. Right. And you would have to hear the testimony that the witnesses were relying on in order to evaluate all of that. Right. Exactly. And that's my point. And so I mean, anyone, I mean, am I wrong that just unless the party stipulated and they both you both stipulated and said, this report can come in and this report can come in. And that's and we agree that there but neither of you were saying that you you would have had to put on you would have had to call the chief, you would have had to call the officers that what the other way came to another conclusion, then you had to put the numbers in. And then, and those, those bodies also relied on other witness statements, right, in order to come to those conclusions. Exactly. And the other thing too, is that, you know, when, when, when plaintiffs expert Leonisio was, was testifying, and they would put in the plaintiffs would put on, the snippets of the officer's testimony. So they would say, they would play, say, for example, and I'm just making up page numbers, we don't have that up off the top of my head, but they would say, Okay, we're going to now play officer Medina's videotaped interview or deposition from pages five to 10. And then we're going to and then we're going to then they ask a bunch of questions and then they say, Okay, now, Mr. Leonisio, we're going to play pages 20 to 25. And now we're asking you a bunch of questions. Is this reasonable? Is this not reasonable? Is it consistent? Is it not consistent? All of that. But we don't know what happened, for example, between pages 10 through 20, because that's not in evidence. Or does that make sense what I'm saying? So that we don't have the entire interview of Medina's, for example, into evidence. And we don't have the entire deposition of Medina into evidence. We just have the trial testimony that that, for example, Officer Medina gave when he was on the stand and the snippets that they played. We don't know. Hypothetically, that we disagree with you on the abuse of discretion and say it should have come in or let's assume also hypothetically, maybe that we agree that it the first point, no, but then when the door was opened, it should have been allowed to come in. Eventually, we have to get to prejudice. I want to know, I want to hear your analysis of if there was error, why is it not prejudicial? And I would like to hear your analysis of what the theory of the case and what had to be found because it doesn't seem I'm assuming the jury had to somehow decide did being tased have anything to do with him dying? Is that correct? I would think so. Yes. Well, what you were you were there for the instructions. You I was not I was not the I was not the perspective. They argued the case. So the theory of the case is that they get up and they said that, you know, that they shouldn't have tased him because the tasing caused what he put into his mouth to go down his throat. And that's why he died. And that's why that's the tasing was a violation under all of those circuits. What what's the theory of the case? Because when you assess prejudice, you have to know what the case is about. So tell me why there's not prejudice here. Well, there's not prejudice for the case. Sorry, I didn't mean to cut you off. No, that's all right. I don't think there's prejudice for a couple of reasons. First of all, I think I think your honor is correct that. They were trying to prove that the tasering caused Mr. Aguilar to swallow the bindle and that if he wasn't tased, he wouldn't have swallowed it, he wouldn't have died and that that is excessive force. So what are the pathologists what are the pathologists say the cause of death was? The pathologist said that he just swallowed the bindle, but he didn't the pathologist didn't make a finding that it was caused by the taser or not by the taser. I don't think they can make that determination. So that was hugely disputed at trial, whether the whether the swallow whether the tasing caused the death. And actually, Mr. Katapoutos made no opinions about that. He was not a medical expert. He was not he was not allowed to testify about any of that kind of stuff. And he didn't. All he just said was whether the case was I'm just trying to understand the way the case was tried. Did the jury have to believe that the tasing caused him to swallow it? And that's because no one testified from a medical perspective that being tased without some causal connections is something in your mouth. They didn't say the tasing caused him to die. Right. Right. Their plaintiff's doctors and medical experts said that the tasing the tasing caused him to inhale, you know, take a big, deep breath in, and that sort of caused the bindle to go back into his throat. And then that caused his death. Right. That was basically what the plaintiff's expert said. Our medical experts came in and said, well, tasing wouldn't cause a deep inhale of breath. It would actually be an exhale of breath and push it out. So there was a dispute. So you're correct in that sense. So since there was testimony on both sides and we have no idea what the jury's view was on this, if there was other material error, we'd have to send it back for a new trial, right? If there were material error, yes, but I don't think there was here because plaintiffs can't I don't think plaintiffs can show that they were prejudiced because they had that their whole claim of prejudice around this issue is that the basic one line that that they objected to was that Catapota should not have been able to say it was consistent with policy. But then the the court instructed the jury to disregard that. And they didn't object to the rest of Mr. Catapota's testimony regarding. The use of the taser or whether it was reasonable or whether it was consistent with policy, I mean, they could have objected to all of that and they didn't. Why would they have had a basis to object to his to your expert's testimony that the use of the taser complied with LAPD policy? Why would that be objectionable? What? Wait, I'm sorry, can you can you I don't understand the question. Can you ask it again? I'm sorry. Sure. I'm saying your your expert gets on the stand. He says, I've looked at the LAPD policy. I've looked at what the officers did. It's my opinion that what the officers did is in in policy. It's consistent with LAPD policy. You're faulting them for not objecting to that testimony. And I was just asking on what ground would they have been able to object to? Well, then they could have directed as it's that that it was L.A. that it violated the motion and limiting it, didn't. That's what I'm saying. It didn't. So on what basis, what other basis would they have been able to object? I don't think there is any. And so let me just move to the question that I have. Why are they wrong in saying that your experts testimony left a misleading impression with the jury that the LAPD itself had concluded that the officer's use of the case was within policy when, in fact, we know that not to be the case? Why is that? Why wasn't that a sufficient opening of the door for them to correct that misleading impression of the jury? Because it's just catapulted his opinion. I mean, he's an expert and they have their own expert. So Leonazio basically testified to the effect that it was out of policy and not consistent with training. And our expert testified that it did. And they and they just make a lot of the fact that that catapulted had been an LAPD, you know, he'd worked for LAPD for many years and all of that. But they also but they got they got out of him. First of all, a couple of things. Number one, that that catapulted did not write the taser policy for LAPD. The jury was well aware of that. The jury was aware that catapulted was a paid expert. If they they got out that he was being paid something like two hundred thirty or two hundred forty dollars an hour, he was paid ten thousand dollars over the course of the case. They you know, they also got out of the fact that that, you know, catapulted could be biased because in four hundred ninety nine out of five hundred cases that he's testified as an expert to, he always testifies in favor of law enforcement. The only test, the only case that he ever testified not in favor of law enforcement was in a case out of Madison, Wisconsin. And they got in and then in their guide, their expert, Leonazio, was a taser expert. He had written the taser policy for many small police departments in northern California. So so what you really have is you have this battle of the experts. So but the the. Chief of Police's. Position bears on that, it's almost akin to a party admission. So in evaluating which expert to believe, why would it not be highly relevant? But that's what makes it so prejudicial, too, because then you would have to bring in. So even if you could argue that there was some kind of door opening, you still have to find that they wanted it, that that the outcome would have been different because you still have to show prejudice and they want to use it for the truth of the matter asserted, which is that. You know that because there was a finding about a policy that it was an unreasonable, excessive use of force and that therefore the. That the city is, well, they argue that they argue that even if you don't think the tasing caused him to swallow it, we're still entitled to damages for him being tased. Was that part of the case? I don't believe so. I think it was more they were they were more focused on the fact that it was the taser that it was OK. So what about this? If if the tasing was out of policy. In order to prevail, did they also still have to prove it could be out of policy, but it wouldn't necessarily have to cause someone to die, it could still be out of policy. So did they still have to prove? Let's assume it was out of policy in order on their theory of the case. Did they also have to prove that the tasing caused him to die? I would think of death. Well. Yeah, I know you say you weren't there, but you we have to you're the representative of who was there. No, that wasn't what I was going to say. I was going to say I would think they would because it was either that or the punch, you know, the punches, because then after after they use the taser, Malero punched him three times in the jaw. And that was found within policy. So if you're going to say and that, you know, the finding that it came in policy wasn't admitted. I mean, so I would think if you're going to admit one part, you know, of the conclusion, which is out of policy, then you'd have to admit the other part, which is in policy. And, you know, assuming you didn't. I guess what I'm trying to figure out, whether any of that was within or without a policy, the jury heard exactly what factually happened to him. And they argued the case was did whatever the conduct was, whether it was in or out of policy, was it required that there be a nexus to his death in order for the plaintiffs to prevail? Was that the theory of the case? I wasn't. I would think so. Well, I'm not whether I would think so or not. I mean, so you guys were there. Yes. I would. Yes. I think to prevail, to say something is excessive force. You have to have causation, too. So did you know, because it was it was a special verdict form. And so one of the, you know, the question is, was there excessive force? And they said no. So they stopped. They didn't answer any more questions. But the next question on the jury verdict form is, did that force cause cause him harm? But isn't that the point? Which is we as we don't know what they would have found if they had resolved the first question in a different way. So it's in that sense, it's no different from a general verdict, except that we know that they only got to the first issue and found it wasn't excessive force. Right. But whether it was in policy or out of policy doesn't prove that it was a constitutional violation. Well, of course, of course. But it's we I think we're going over stuff we've already covered. That doesn't mean it isn't relevant to that determination. Hey, so do there's a panel, Judge Watford, did you have any additional questions, Judge Rakoff? Oh, OK. Well, we've taken you over. So by the time we come back to then, I gave you two minutes for rebuttal. So go ahead. I think you see where the focus is. Thank you, Your Honor. Thank you. Yes, Your Honor. Thank you. I just wanted to clear up a couple of things. First, Judge Callahan, we were absolutely trying to admit the LAPD reports with the findings. We were not trying to call witnesses and have a dispute about the different witnesses, their judgments or whatever. We thought the LAPD reports themselves were admissible under Federal Rules of Evidence 8038A3 and the Rule for Party Admissions. They were a report following a legally authorized investigation stating the results of the investigation. That's an admissible document under the federal rules of evidence. So that may speak to your honor's concern about waste of time and trial within trial. We were not trying to bring everybody up and that doesn't mean that. But that doesn't mean that it all comes in just just because you say, OK, well, I want to introduce this report. I mean, a court would be say, well, you can't just introduce this report without saying what the basis is for it. I'm not sure, Your Honor's question, but we have cited several 80383 cases in our briefs and the statements of fact, the findings, the opinions in those reports all come in under that exception. So that was so that was what we were seeking for the court to do. Opposing counsel talked for a little bit about Leonecio's testimony. So supposing, though, I think perhaps what Judge Callahan is getting at is for the other side to then rebut that they would have to call numerous witnesses. And the danger is it would become a mini trial over what was a secondary issue at best. I think, Your Honor, that it was not a secondary issue at all. And also, they would not have had to call witnesses, nor did they put any of those witnesses on their witness list. And so those witnesses wouldn't have been able to be called anyway. The opposing. Is that true? If they had expected the report to be excluded and then to their shock, it's allowed. And don't you think a trial judge would then allow them to call witnesses? I don't think so, Your Honor. The witness lists are required to be submitted for around the same time as the motion is eliminated, certainly before you have a ruling on the motion. And the litigants are expected to put all the witnesses, including those they may call, you know, in the event they become necessary. So I don't think that would have been the standard for amending the pre-trial conference order. I don't think that would have met the standard for amending the pre-trial conference order on that issue. And in any event, the LAPD findings included the information about the opposing opinion and what it was based on. There was no need to call anyone. The documents themselves explained what the reasoning was on both sides. And it was that reasoning that we thought was so powerful for highlighting the changes in the officer's testimony, which was central to the trial as well. So the reports were a tool to elucidate all these evidentiary issues and persuade the jury. It was relevant to persuade the jury of the facts that were reported. So, OK, how many people voted that it was within policy and how many people voted it was not in policy? I don't recall the number of people on the panel. The minority recommendation was one person, but it was adopted by the chief of police and the police commission. I know, but I mean, how many was on the other side? So I don't recall a handful on either side. The police commission had a few, the panel had a few. But I think it wouldn't have bothered us. We thought that it was much more persuasive that the police commission and the chief of police had found in favor of the minority recommendation. Of course, you thought that it was consistent with your case. Of course, I wouldn't expect you to say otherwise. Yeah, I'm so sorry. And defendants were free to argue the alternative. OK, just briefly. You're already I've already given you four and four over four minutes. So wrap it up in 30 seconds. Sure. I just want to answer your other question. The pathologist found that the cause of death was asphyxiation and opposing counsel was correct that the that the pathologist didn't make any opinion on the cause of the asphyxiation. But it was plaintiff's position during trial that the use of force, it was a one minute use of force incident with five tasering and three punches. During that force incident, he asphyxiated. Defendant said he caused it himself. Plaintiff said it was the use of force that caused it. So that was what was happening at the trial. And then how would it really matter? So how would it really matter to the end result, whether it was within or outside policy? If it's really did the taser, did the tasing cause him? It seems to me, did the tasing cause him to swallow it? Is it is it that the central issue? That was the causation issue. But that wasn't the liability issue. The boss, you're saying it wouldn't be excessive, at least in determining whether the force and cause allegedly caused the death was excessive. You could look to whether there was a violation of policy. Exactly. And one final point. Opposing counsel said at several points that it was plaintiff's burden to show prejudice. If the court finds error, it is the defendant's burden to show that there was not prejudice, that it was harmless. And so I want to thank you for both for your argument. This matter will stand submitted. Thank you. So.
judges: Callahan, Watford, Rakoff